**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONNA HERNANDEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SECURE HEALTHCARE INFORMATION MANAGEMENT, LLC,<br><br>Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY DEMAND |

Plaintiff DONNA HERNANDEZ ("Plaintiff") brings this class action against Defendant Secure Healthcare Information Management, LLC ("Defendant" or "SHIM") for its failure to properly secure and safeguard Plaintiff's and Class Members' protected health information ("PHI"), and personally identifiable information ("PII") stored within Defendant's information network (collectively, "Private Information").

## INTRODUCTION

1. This class action arises from a data security incident involving Defendant SHIM that occurred between July 6 and July 16, 2026 (the "Data Breach"). During the Data Breach, cybercriminals gained unauthorized access to individuals' sensitive personal information including names, dates of birth, Social Security numbers, driver's license or state identification numbers, medical information, and health insurance information (collectively, "Private

Information").[1]

2. SHIM stated that its network was disrupted on July 17, 2026, prompting an investigation with cybersecurity experts. On September 18, 2026, SHIM confirmed the incident's scope and obtain information sufficient to notify potentially affected individuals. SHIM publicly announced the incident and mailed notices to potentially affected individuals on October 6, 2026.[2]

3. Accordingly, Plaintiff brings this action individually and on behalf of all others similarly situated to obtain redress for Defendant's failure to reasonably safeguard their Private Information and to provide adequate information concerning its status and security, including where it is maintained, who has access to it, and how it is protected. Plaintiff also seeks appropriate relief to protect the Private Information Defendant continues to retain.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed Class, and at least one Class Member is a citizen of a State different from Defendant.

5. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

6. This Court has personal jurisdiction over Defendant because Defendant maintains

[1] Secure Health Management, LLC, *Secure healthcare Information Management, LLC Provides Notice Following Data Security Incident,* PR Newswire (Oct. 6, 2026).
[2] *Id.*

its headquarters and principal place of business in Allentown, Pennsylvania, within this District. Defendant regularly conducts business in Pennsylvania, including this District, by providing medical billing, coding, and healthcare information management services to physicians and medical institutions.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1). Defendant is the sole defendant in this action and maintains its headquarters and principal place of business in Allentown, Pennsylvania, within this District. Defendant is subject to this Courts's personal jurisdiction and therefore resides in this District for venue purposes under 28 U.SC. § 1391(c)(2).

## THE PARTIES

**Plaintiff Donna Hernandez**

8. Plaintiff Donna Hernandez is an adult individual and, at all relevant times herein, a resident and citizen of Freemansburg, Pennsylvania. Upon information and belief, Plaintiff is a victim of the Data Breach.

**Defendant Secure Healthcare Information Management, LLC**

9. Defendant Secure Healthcare Information Management, LLC ("SHIM") is a limited liability company with its principal place of business at 1605 N. Cedar Crest Boulevard, Suite 110, Allentown, Pennsylvania 18104. SHIM provides medical billing and management services to physicians and medical institutions in northeastern Pennsylvania.

## FACTUAL BACKGROUND

### The Data Breach

1. Defendant provides medical billing and management services to physicians and medical institutions in northeastern Pennsylvania.

2. In providing its services, Defendant receives, processes, and maintains protected health information and/or personally identifiable information ("PHI/PII" or "Private Information").

3. During its operations, Defendant acquired, collected, and stored Plaintiff's and Class Members' Private Information.

4. At all relevant times, Defendant knew or should have known that Plaintiff and Class Members would entrust Defendant with sensitive data, including highly confidential Private Information, and furthermore, that the information it collects from patients is of a highly private and sensitive nature, and that Defendant has a legal duty to safeguard that information.

5. Upon information and belief, unauthorized third party cybercriminals gained access to Plaintiff's and Class Members' Private Information hosted by Defendant, with the intent of misusing it, including by marketing and selling it.

6. Defendant has since begun notifying affected individuals that their Private Information was accessed without authorization in the Data Breach.[3]

7. Defendant has not publicly disclosed how the unauthorized party gained access to its systems, including whether the Data Breach involved ransomware or a phishing attack. The precise manner in which the Data Breach occurred, the systems and information affected, and the extent to which Private Information was accessed or acquired remain within Defendant's knowledge and control and are expected to be clarified through discovery.

8. The precise number of individuals who have had their data exposed due to Defendant's failure to implement appropriate security safeguards has not been publicly disclosed,[4] but, upon information and belief, is estimated to be in the thousands based on

---

[3] *Id.*
[4] *Id.*

Defendant's patient base. According to its website, Defendant has worked with more than 200 physicians and four hospital institutions, providing services that include medical billing, electronic health record implementation, and physician office management.[5]

9. Protected health information ("PHI") is a category of information that refers to an individual's medical records and history, which is protected under the Health Insurance Portability and Accountability Act ("HIPAA"), which may include test results, procedure descriptions, diagnoses, personal or family medical histories and data points applied to a set of demographic information for a particular patient.

10. Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity and is generally defined to include certain identifiers that do not on their face name an individual, but that is considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, and financial account numbers).

11. According to Defendant's public notice, the information potentially involved in the Data Breach included names, dates of birth, Social Security numbers, driver's license or state identification numbers, medical information, and health insurance information.

12. Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' Private Information was safeguarded, failing to take available steps to prevent unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use.

[5] *About Us,* Secure Healthcare Info. Mgmt.., LLC, https://secureehr.com/content_view.asp?wid=1

13. As a result, Plaintiff and Class Members' Private Information was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiff and Class Members in the future.

14. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are thus entitled to injunctive and other equitable relief.

**Plaintiff's Experience**

15. Plaintiff underwent surgery at Lehigh Valley Hospital in 2017 and subsequently underwent three additional surgeries at that hospital.

16. Plaintiff received an individualized data-breach notification from Defendant advising that Plaintiff's personal information may have been affected by the Data Breach. The notice did not identify the specific categories of Plaintiff's information involved.

17. Based on that notification and Defendant's role as a provider of medical billing and healthcare information-management services, Plaintiff alleges, upon information and belief, that Defendant maintained information concerning Plaintiff in connection with those services.

18. At all times herein relevant, Plaintiff is and was a member of the Class.

19. Plaintiff received a letter from Defendant, dated October 6, 2026, stating that their PHI/PII was involved in the Data Breach (the "Notice").

20. As a result, Plaintiff was injured in the form of lost time dealing with the consequences of the Data Breach, which included and continues to include: time spent verifying the legitimacy and impact of the Data Breach; time spent exploring credit monitoring and identity theft insurance options; time spent self-monitoring their accounts with heightened

scrutiny; and time spent seeking legal counsel regarding their options for remedying and/or mitigating the effects of the Data Breach.

21. Plaintiff was also injured by the material risk of future harm they suffer based on Defendant's breach. This risk is imminent and substantial because Plaintiff's data has been exposed in the breach; the data involved, which includes Social Security numbers and medical information, is highly sensitive and presents a high risk of identity theft or fraud; and it is likely, upon information and belief, that some of the Class's information that has been exposed has already been misused.

22. Plaintiff suffered actual injury in the form of damages to and diminution in the value of their Private Information, a form of intangible property that they entrusted to Defendant, which was compromised in and as a result of the Data Breach.

23. Plaintiff, as a result of the Data Breach, has increased anxiety for their loss of privacy and anxiety over the impact of cybercriminals accessing, using, and selling their Private Information.

24. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being placed in the hands of unauthorized third parties/criminals.

25. Plaintiff has a continuing interest in ensuring that their Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themself and the following Class:

> All individuals within the United States of America whose Private Information was accessed or acquired without authorization as a result of the July 2026 data security incident experienced by Secure Healthcare Information Management, LLC (the "Class").

27. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

28. Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

29. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

30. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are so numerous that joinder of all members is impractical, if not impossible. Upon information and belief, the Class consists of thousands of individuals, whose identities can be readily determined from Defendant's records.

31. Commonality: Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a. Whether Defendant had a legal duty to Plaintiff and the Class to exercise

due care in collecting, storing, using, and/or safeguarding their Private Information;

b. Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

c. Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

d. Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

e. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security, including HIPAA;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g. How and when Defendant actually learned of the Data Breach;

h. Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the Private Information of Plaintiff and Class Members;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Plaintiff and Class Members are entitled to actual damages and/or whether injunctive, corrective and/or declaratory relief and/or

accounting is/are appropriate as a result of Defendant's wrongful conduct; and

k. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

32. Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

33. Adequacy of Representation: Plaintiff in this class action is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature.

34. Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

35. Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

36. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests

adequately.

37. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

38. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

39. Unless a Class-wide injunction is issued, Defendant may continue failing to properly secure the Private Information of Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

40. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure 23.

## COMMON FACTUAL ALLEGATIONS

### Defendant's Failed Response to the Breach

41. In the course of the Data Breach, one or more unauthorized third parties accessed Class Members' Private Information. Upon information and belief, Plaintiff was among the individuals whose data was accessed in the Data Breach.

42. As alleged above, the unauthorized third-party cybercriminals gained access to Plaintiff's and Class Members' Private Information with the intent of misusing it, including by

marketing it and selling it.

43. Defendant had and continues to have obligations created by HIPAA, applicable federal and state law, reasonable industry standards, common law, and its own assurances and representations to keep Plaintiff's and Class Members' Private Information confidential and to protect such Private Information from unauthorized access.

44. Plaintiff and Class Members were required to provide their Private Information to Defendant as a condition of receiving medical care, and in furtherance of this relationship, Defendant collected and stored Plaintiff's and Class Members' Private Information with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

45. Despite this, Plaintiff and the Class Members remain, even today, in the dark regarding how the Data Breach occurred, what particular data was accessed, and what steps are being taken, if any, to secure their Private Information going forward.

46. Plaintiff and Class Members are, thus, left to speculate as to where their Private Information ended up, who has used it, and for what potentially nefarious purposes, and are left to further speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities to prevent further breaches.

47. Unauthorized individuals can now easily access the Private Information of Plaintiff and Class Members.

**Defendant Collected/Stored Class Members' Private Information**

48. Defendant acquired, collected, and stored and assured reasonable security over Plaintiff's and Class Members' Private Information.

49. As a condition of its relationships with Plaintiff and Class Members, Defendant required that Plaintiff and Class Members entrust Defendant with highly sensitive and confidential Private Information.

50. Defendant, in turn, stored that information in the part of Defendant's system that was ultimately affected by the Data Breach.

51. By obtaining, collecting, and storing Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was thereafter responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

52. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

53. Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

54. Defendant could have prevented the Data Breach by adequately securing and encrypting and/or more securely encrypting its servers generally, as well as Plaintiff's and Class Members' Private Information.

55. Defendant's negligence in safeguarding Plaintiff's and Class Members' Private Information is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years, particularly against healthcare providers.

56. Yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Plaintiff's

and Class Members' Private Information from being compromised.

**<u>Defendant Had an Obligation to Protect the Stolen Information</u>**

57. Defendant's failure to adequately secure Plaintiff's and Class Members' Private Information breached duties it owed under applicable law. Upon information and belief, in performing medical billing and healthcare information-management services, Defendant received and maintained protected health information on behalf of healthcare providers that were covered entities under HIPPA. Defendant therefore acted as a business associate within the meaning of 45 C.F.R. § 160.103. Independently of its obligations under HIPPA, Defendant owed Plaintiff and Class Members a common-law duty to exercise reasonable care in safeguarding their Private Information.

58. Defendant was required to comply with HIPPA provisions applicable to business associates, including restrictions on uses and disclosures of protected health information and the Security Rule's safeguards for electronic protected health information. *See* 45 C.F.R. §§ 164.502(a)(3), 164.302, and 164.306.

59. HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for protecting health information.

60. HIPAA's Security Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

61. HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

62. "Electronic protected health information" is "individually identifiable health

information … that is (i) [t]ransmitted by electronic media; [or] (ii) [m]aintained in electronic media.” 45 C.F.R. § 160.103.

63. HIPAA’s Security Rule requires Defendant to do the following, 45 C.F.R. § 164.306(a):

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

64. HIPAA also requires Defendant to “review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information” under 45 C.F.R. § 164.306(e), and to “[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights.” 45 C.F.R. § 164.312(a)(1).

65. Moreover, under the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, Defendant, as a business associate, was required to notify the affected covered entities following discovery of a breach of unsecured protected health information “without unreasonable delay and in no case later than 60 days following the discovery of the breach.”

66. Defendant was also prohibited by the Federal Trade Commission Act (the “FTC

Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce."[6]

67. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

68. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Plaintiff and Class Members.

69. Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the Private Information was adequately secured and protected.

70. Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

71. Defendant owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach in its data security systems in a timely manner.

72. Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

[6] The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

73. Defendant owed a duty to Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from theft because such an inadequacy would be a material fact in the decision to entrust this Private Information to Defendant.

74. Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

75. Defendant owed a duty to Plaintiff and Class Members to encrypt and/or more reliably encrypt Plaintiff's and Class Members' Private Information and monitor user behavior and activity in order to identify possible threats.

**Value of the Relevant Sensitive Information**

76. Private Information is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites.

77. Numerous sources cite dark web pricing for stolen identity credentials; for example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200[7]; Experian reports that credit card details can sell for $10 to $240 on the dark web[8]; and other sources report that criminals can also purchase access to entire company data breaches from $999 to $4,995.[9]

78. Identity thieves can use Private Information, such as that of Plaintiff and Class

[7] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (Oct. 16, 2019), *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed October 5, 2026).
[8] Ben Luthi, *Here's What Your Data Sells for on the Dark Web*, Experian (June 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed October 5, 2026).
[9] *In the Dark*, VPNOverview (2019), *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed October 5, 2026).

Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

79. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used: according to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data might be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[10]

80. Here, Defendant knew of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiff's and Class Members' Private Information were stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach of this magnitude.

81. As detailed above, Defendant is a billing and medical management company for physicians operating in northeastern Pennsylvania, with the resources to deploy robust cybersecurity protocols. It knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiff and Class

[10] U.S. Gov't Accountability Off., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent is Unknown* at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf (last accessed October 5, 2026).

Members. Therefore, its failure to do so is intentional, willful, reckless and/or grossly negligent.

82. Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' Private Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) upon information and belief, concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## CLAIMS FOR RELIEF

### COUNT ONE
**Negligence**
**(On behalf of the Class)**

83. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

84. At all times herein relevant, Defendant owed Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their Private Information and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing the Private Information of Plaintiff and Class Members in its computer systems and on its networks.

85. Among these duties, Defendant was expected:

a. to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its

possession;

b. to protect Plaintiff's and Class Members' Private Information using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c. to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

d. to promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

86. Defendant knew that the Private Information was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

87. Defendant knew, or should have known, of the risks inherent in collecting and storing Private Information, the vulnerabilities of its data security systems, and the importance of adequate security.

88. Defendant knew about numerous, well-publicized data breaches, including breaches targeting healthcare providers.

89. Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiff's and Class Members' Private Information.

90. Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the Private Information that Plaintiff and Class Members had entrusted to it.

91. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their Private Information.

92. Because Defendant knew that a breach of its systems could damage thousands of individuals, including Plaintiff and Class Members, Defendant had a duty to adequately protect its data systems and the Private Information contained therein.

93. Plaintiff's and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions.

94. Moreover, only Defendant had the ability to protect its systems and the Private Information stored on them from attack. Thus, Defendant had a special relationship with Plaintiff and Class Members.

95. Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant, Plaintiff, and/or the remaining Class Members.

96. Defendant breached its general duty of care to Plaintiff and Class Members in, but not necessarily limited to, the following ways:

a. by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members;

b. by failing to timely and accurately disclose that Plaintiff's and Class Members' Private Information had been improperly acquired or accessed;

c. by failing to adequately protect and safeguard the Private Information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information;

d. by failing to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Private Information of Plaintiff and Class Members, misuse it, and intentionally disclose it to others without consent;

e. by failing to adequately train its employees not to store Private Information longer than absolutely necessary;

f. by failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class Members' Private Information;

g. by failing to implement processes to detect data breaches, security incidents, or intrusions quickly; and

h. by failing to encrypt Plaintiff's and Class Members' Private Information and monitor user behavior and activity in order to identify possible threats.

97. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

98. As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional

harms and damages.

99. The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the Private Information to Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their Private Information.

100. Defendant breached its duty to notify Plaintiff and Class Members of the unauthorized access by, upon information and belief, unreasonably delaying or failing to provide notice after learning of the Data Breach and then by failing and continuing to fail to provide Plaintiff and Class Members sufficient information regarding the breach, including when it occurred, when Defendant discovered it, and how it happened.

101. To date, Defendant has not provided sufficient information to Plaintiff and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and Class Members.

102. Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information.

103. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class Members.

104. Plaintiff's and Class Members' Private Information was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

105. Defendant's wrongful actions, inactions, and omissions constituted (and

continue to constitute) common law negligence.

106. The damages Plaintiff and Class Members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

107. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their Private Information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

108. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

109. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and are subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

## COUNT TWO
**Breach of Implied Contract**
**(On behalf of the Class)**

110. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

111. Through its course of conduct, Defendant, Plaintiff and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Private Information.

112. Defendant required Plaintiff and Class Members to provide and entrust their Private Information as a condition of obtaining Defendant's medical services.

113. Defendant solicited and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices.

114. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

115. As a condition of their relationship with Defendant, Plaintiff and Class Members provided and entrusted their Private Information to Defendant.

116. In so doing, Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and

Class Members if their data had been breached and compromised or stolen.

117. A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their Private Information to Defendant, in exchange for, amongst other things, the protection of their Private Information.

118. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

119. Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their Private Information and by failing to provide timely and accurate notice to them that their Private Information was compromised as a result of the Data Breach.

120. As a direct and proximate result of Defendant's above-described breaches of implied contract, including the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) upon information and belief, the illegal sale of the compromised data on the dark web; (e) lost work time; (f) loss of the benefit of their bargains; and (g) other economic and non-economic harm.

**COUNT THREE**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On behalf of the Class)**

121. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein.

122. Every contract in this State has an implied covenant of good faith and fair dealing, which

is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

123. Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendant.

124. Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard the Private Information and financial information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of the Private Information and financial information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

125. Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**<u>COUNT FOUR</u>**
**Unjust Enrichment**
**(On behalf of the Class)**

126. Plaintiff realleges and reincorporates every allegation set forth in the preceding paragraphs as though fully set forth herein, except those alleging the existence of an express or implied contract between Plaintiff and Class Members and Defendant.

127. This claim is pleaded in the alternative to Count Two. To the extent the Court finds that no enforceable contract governs Defendant's obligation to safeguard Plaintiff's and Class Members' Private Information, Plaintiff and Class Members are entitled to relief under this Count.

128. By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Plaintiff and Class Members.

129. Defendant, prior to and at the time Plaintiff and Class Members entrusted their Private Information to Defendant, caused Plaintiff and Class Members to reasonably believe that Defendant would keep such Private Information secure.

130. Defendant was aware, or should have been aware, that reasonable patients and consumers would have wanted their Private Information kept secure and would not have sought services from Defendant, directly or indirectly, had they known that Defendant's information systems were sub-standard for that purpose.

131. Defendant was also aware that, if the substandard condition of and vulnerabilities in its information systems were disclosed, it would negatively affect Plaintiff's and Class Members' decisions to seek services therefrom.

132. Defendant failed to disclose facts pertaining to its substandard information systems, defects, and vulnerabilities therein before Plaintiff and Class Members made their decisions to seek medical services from healthcare providers whose information Defendant processed.

133. Instead, Defendant suppressed and concealed such information. By concealing and suppressing that information, Defendant denied Plaintiff and Class Members the ability to make a rational and informed decision about where to obtain medical services and took undue advantage of Plaintiff and Class Members.

134. Defendant was unjustly enriched at the expense of Plaintiff and Class Members, as Defendant received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class Members; however, Plaintiff and Class Members did not receive the benefit of their bargain because they paid for services that did not satisfy the purposes for which they bought/sought them.

135. Since Defendant's profits, benefits, and other compensation were obtained improperly, Defendant is not legally or equitably entitled to retain any of the benefits,

compensation or profits it realized from these transactions.

136. Plaintiff and Class Members seek an Order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits and other compensation obtained by Defendant from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of themself and each member of the proposed Class, respectfully requests that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Class under Federal Rule of Civil Procedure 23, including the appointment of Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

2. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3. For restitution and disgorgement of the profits, benefits, and other compensation Defendant unjustly obtained at the expense of Plaintiff and Class Members, including through the establishment of a constructive trust;

4. That the Court enjoin Defendant, ordering it to cease from unlawful activities;

5. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

6. For injunctive relief requested by Plaintiff, including but not limited to, injunctive

and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:

a. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

b. requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

c. requiring Defendant to delete and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

d. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' Private Information;

e. requiring Defendant to engage independent third party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems periodically;

f. requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

g. requiring Defendant to conduct regular database scanning and securing checks;

h. requiring Defendant to establish an information security training program

that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiff and Class Members;

i. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting Private Information;

j. requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to monitor Defendant's networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested, and updated; and

k. requiring Defendant to meaningfully educate all Class Members about the threats they face due to the loss of their Private Information to third parties, as well as the steps affected individuals must take to protect themselves.

7. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

8. For an award of attorney's fees, costs, and litigation expenses, as allowed by law; and

9. For all other Orders, findings, and determinations identified and sought in

this Complaint.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: October 27, 2026

Respectfully submitted,

By: */s/ Kevin Laukaitis*

**LAUKAITIS LAW LLC**
Kevin Laukaitis (PA ID no. 321670)
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

Attorneys for Plaintiff and the Class